UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NE CORP., a/k/a NE CORPORATION, LLC, | § § § | |
| Plaintiff, | § § | |
| V. | § | CIVIL ACTION NO. 3: 05-CV-1525-B |
| SCOTT FISH, | § § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

The following motions are before the Court: 1) Defendant Scott Fish's Motion to Dismiss for Lack of Jurisdiction (doc. 5); 2) Defendant Scott Fish's Amended Motion to Dismiss for Lack of Personal Jurisdiction (doc. 12); and 3) Defendant Scott Fish's Objections to Evidence and Motion to Strike (doc. 14). For the reasons explained below, the Court DENIES all of these motions.

### I. Factual and Procedural Background

This is a suit for failure to pay promissory notes and to honor a guaranty that the notes would be paid. The facts surrounding the transaction for which the notes were executed are merely adumbrated by the parties' briefing. Certain facts can be gleaned, however, from the record evidence which includes a Bill of Sale and Assignment ("Bill of Sale") attached to Plaintiff NE Corp.'s ("NE") appendix to its response. (*See* Pl.'s App. in Supp. Resp. to Def.'s Am. Mot. Dismiss ["Pl. App."] at Ex. D). From the Bill of Sale it appears that both NE and Defendant Scott Fish ("Fish") were once the sole members of a limited liability company called the Noco Oil Company, LLC ("Noco"). (*Id.* at 24). Noco operated two oil producing wells and held leases on some land in Colorado. (*Id.*). NE

1

and Fish sold their respective membership interests in Noco to Balfour Land Development, LLC ("Balfour") in return for $150,000 in the form of two $75,000 promissory notes, both dated June 12, 2001. (*Id.* at 6, 9).

The first note (the "NE Note"), made payable to NE, was executed by Balfour and Fish (as an accommodation maker) and delivered to NE in its home state of Texas. (*Id.* at 3, 6-7, 24). The second note (the "Fish Note") was executed by Balfour and made payable to Fish. (Pl.'s First Am. Compl. ["Compl."] at ¶ 8). Fish, in turn, endorsed the note to NE and delivered it to NE in Texas. (Compl. at ¶ 9; Pl. App. at 3). In the Bill of Sale, Fish acknowledged that NE would not transfer its interest in Noco and release claims against Noco unless NE received consideration in the amount of $150,000 "for which NE will receive the NE Note and the Fish Note[.]" (Pl. App. at 24). Fish further acknowledged that NE would not accept either note unless Fish guaranteed payment. (*Id.*). Fish satisfied those requirements by executing a Guaranty of Payment and Performance, dated July 12, 2001, that applied to both notes. (*Id.* at Ex. C).

The notes matured, but were not paid. (Compl. at ¶¶ 10-11). NE then filed a lawsuit against Fish in Texas state court for breach of contract. The case was removed to this Court on August 1, 2005 on the basis of diversity jurisdiction. Fish moved to dismiss the case for lack of personal jurisdiction on August 12, 2005. On August 22, 2005, NE amended its complaint, adding a claim that Fish fraudulently induced it to sell its interest in Noco to Balfour. In response to the filing of NE's amended complaint, Fish filed an amended motion to dismiss on September 19, 2005. That same day he also filed objections to evidence submitted by NE in response to his original motion to dismiss. NE has responded to all motions filed by Fish, and those motions are ripe for review and determination.

## II. Analysis

**A.     Legal Standards**

Although the plaintiff bears the burden of proof to show that a nonresident defendant is subject to the Court's jurisdiction, where an evidentiary hearing is not held, a plaintiff need only establish a prima facie case of jurisdiction; proof by a preponderance of the evidence is not required. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992).[1] All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

In establishing jurisdiction, two preconditions must be met: (1) the nonresident must be amenable to service of process under Texas's long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the Constitution. *Jones*, 954 F.2d at 1067. Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Id.* at 1067-68 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it should reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and

---

[1] "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

3

substantial justice. *Jones*, 954 F.2d at 1068.

The "minimum contacts" test can be met by contacts giving rise to either general or personal jurisdiction. *Gundle*, 85 F.3d at 205. Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Id.* (citation omitted). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted). In either context, the Court considers the totality of the circumstances in conducting the minimum contacts analysis; no single factor is determinative. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The analysis ultimately reduces to whether the nonresident defendant purposefully availed itself of the privilege of conducting business in this state, thereby invoking the benefits and protections of Texas law. *Id.* at 1191.

**B.     General Jurisdiction**

NE asserts, rather perfunctorily, that Fish engaged in continuous and systematic activity in Texas by contracting with NE, traveling to Texas for business and personal reasons, making alleged misrepresentations in Texas, and for agreeing to a Texas choice-of-law clause in agreements between the parties. For his part Fish states in his declaration that Texas is a state where he owns no property, conducts no business, has no bank accounts or inventories, employs no one, and does not reside. (Def. Scott Fish's App. in Supp. Mot. Dismiss for Lack of Personal Jurisdiction ["Def. App."] at 24-25). The Court finds that Fish's doings in Texas are simply not the sort of substantial, systematic, and continuous activities necessary for the assertion of general jurisdiction over him in this state. *Marathon Oil Co.*, 182 F.3d at 295.

**C.      Specific Jurisdiction**

NE's contention that Fish is subject to specific jurisdiction in Texas revolves around the facts and circumstances surrounding the execution of the agreements at issue in this lawsuit and the representations contained in those agreements. First, NE states that it is a Texas corporation and that the relevant agreements were entered into while NE was in Texas. (Pl. Resp. Brief at 8; Pl. App. at 2-4). Second, NE points out that the agreements between the parties made clear that Fish's guaranty of the notes at issue induced it to sell its membership interest in Noco. (*Id*. at 12, 24). The Bill of Sale states that "NE would not transfer its interest in Noco and release claims against Noco without consideration of [$150,000]", which was to be supplied by the NE Note and the Fish Note. (*Id*. at 24). The Bill of Sale further provided that NE would not accept the notes as payment unless they were guaranteed by Fish. (*Id*.). And the Guaranty itself states that NE "was not willing to enter into such transactions and extend credit to Balfour unless [Fish] unconditionally guarantees all present and future indebtedness and obligations of Balfour to [NE.]" (*Id*. at 12). The Guaranty further stated that Fish "has and will have property and assets in the State of Texas sufficient to satisfy and repay such direct debts, obligations, and liabilities." (*Id*. at 17). NE also relies on the fact that payments under the NE Note[2] and the Guaranty[3] were to be made to Texas and that the Guaranty contains a Texas choice-of-law clause. (*Id*. at 6, 19, 20). NE further states that, after the

---

[2] "Principal and interest shall be payable at the office of Lender at 3811 Turtle Creek, Suite 700, Dallas, Texas 75219-4419 or at such other place as the holder hereof may designate in writing." (Pl. App. at 6).

[3] "All payments made by the Guarantor under or by virtue of this Guaranty shall be paid in immediately available funds, in lawful money of the United States of America, to the noteholder at the place of payment set forth in the Note, or at such other place as the Noteholder may hereafter designate in writing." *Id*. at 20.

formation of the agreements, Fish promised NE, once while personally present in Texas and also by telephone, that he would fulfill his payment obligations under the agreements. (*Id.* at 3,4).

On the other hand Fish contends that his dealings in Texas were quite limited. First, he points out that he is a Tennessee resident and does not conduct business in Texas. (Def. App. at 24-25). While he recognizes that the NE Note and Guaranty required him to send payments to Texas, that fact, he says, does not alone amount to a sufficient contact with this state to justify the exercise of personal jurisdiction. (Def. Mot. Dismiss Brief at 7). Instead he argues that either Tennessee, where he currently resides, or Colorado, the situs of the property made the basis of the underlying sale, would be more appropriate places to try this suit. According to Fish, the only real connection that this case has to Texas is the fact that NE happens to be located here.

    i)    *Breach of Contract*

Because this Court must have personal jurisdiction over Fish with respect to each claim asserted by NE, the Court will separately evaluate Fish's contacts with Texas for each of NE's two claims. *See Plainscapital Bank v. Malina*, 2005 WL 3454017, at *2 (N.D. Tex. Dec. 14, 2005). The Court first finds that personal jurisdiction over Fish with respect to NE's breach of contract claim is appropriate. For starters, the Guaranty specifically states that it shall be "governed by and construed and enforced in accordance with the laws of the State of Texas[.]" (Pl. App. at 19). To be sure, the presence of a choice-of-law clause in a contract will not alone support personal jurisdiction in an action based on that contract. *See Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985); *Plainscapital Bank*, 2005 WL 3454017, at *2. Nevertheless, "[t]he Fifth Circuit has held that a choice-of-law provision, coupled with an expansive guaranty [], is sufficient to establish minimum contacts supporting personal jurisdiction." *Goodman Co., L.P. v. A&H Supply, Inc.*, 396 F.Supp.2d

6

766, 771-72 (S.D. Tex. 2005) (citing *Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co.*, 653 F.2d 926, 923 (5th Cir. 1981)). In *Marathon*, a Colorado company, Mountain Empire, distributed in Colorado the products of Marathon, a Texas corporation. *Marathon*, 653 F.2d at 922. A Mountain Empire principal and two associates entered into a broad guaranty of Mountain Empire's obligations to Marathon. *Id.* Soon after the guaranty was sent to Texas, the parties memorialized their business relationship in a contract that contained a Texas choice-of-law clause. *Id.* at 923. Mountain Empire failed to pay its debts to Marathon, and Marathon consequently sued Mountain Empire and an individual guarantor in Texas. *Id.* at 922. The appellate court found that the choice-of-law clause contained in the general contract between the parties involved "purposeful and affirmative action, resulting in, at the least, a minimum contact with Texas by [the guarantor]".).

Relying on *Marathon*, other district courts in the Fifth Circuit have found personal jurisdiction to exist where expansive guarantees are paired with a choice-of-law clause. *See e.g. Plainscapital Bank*, 2005 WL 3454017, at *2 (finding that absolute guaranty "coupled with the Texas choice-of-law clause, will support personal jurisdiction over a claim related to the Guaranty."); *Goodman Co.*, 396 F.Supp.2d at 773 (same). The Guaranty at issue here is likewise of an expansive, absolute, and continuing type. (Pl. App. at 12) ("Guarantor hereby absolutely and unconditionally guarantees the prompt, complete, and full payment when due ...."; "This Guaranty is an irrevocable, absolute, continuing guaranty of payment ....."). The Court finds that this broad guaranty, together with the Texas choice-of-law provision embodied within it, supports personal jurisdiction over NE's breach of contract claim. *Plainscapital*, 2005 WL 3454017, at *2.

Other facts also support a finding that Fish engaged in minimum contacts with this state. First, NE is a Texas corporation, and NE has presented evidence that it was Fish that initially

proposed to NE in Texas the idea of selling Noco to Balfour, the transaction out of which the agreements at issue in this case sprung.  (Pl. App. at 2); *see Goodman Co.*, 396 F.Supp.2d at 773 ("[J]urisdiction is proper where the contacts 'proximately result from actions by the defendant *himself* that create a substantial connection with the forum State.'") (emphasis in original) (quoting *Stuart*, 772 F.2d at 1191)); *J.D. Fields & Co., Inc. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 604 (Tex. App. – Houston [1st Dist.] 2000, no pet.) ("[T]he most critical fact in this case . . . is that defendant guarantor telephoned plaintiff's Houston office with an offer to personally guarantee the defendant company's indebtedness in order to induce plaintiff to contract with defendant company.").  And recitals in both the Guaranty and Bill of Sale state that NE would not have agreed to the transaction with Balfour, including as part of that transaction the acceptance of the NE and Fish Notes as consideration, unless Fish guaranteed payment of the notes.  (Pl. App. at 12, 24).  Courts have repeatedly found that personal jurisdiction attaches over a nonresident guarantor when the guaranty is given to induce the resident plaintiff enter into a contract or extend credit.  *See e.g. Consol. Cos., Inc. v. Kern*, 2000 WL 1036186, at *3 (E.D. La. July 25, 2000) (facts demonstrated purposeful availment where, among other things, guaranty explicitly stated that it was executed to induce resident company to continue to provide credit to companies in which guarantor had substantial interest); *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F.Supp.2d 617, 621 (D. Md. 1988) (finding that individual defendants "transacted business" within meaning of Maryland long-arm statute by inducing resident company to enter into license agreement by furnishing personal guarantees); *Kimball Int'l, Inc. v. Warmack*, 1989 WL 432179, at *6-7 (S.D. Ind. March 22, 1989) (finding that recitals in guarantees stating that guarantees were made in consideration of grant of credit supported personal jurisdiction).

Furthermore, the execution of the Guaranty by Fish appears to have been a voluntary act undertaken for his own personal benefit. *See Plainscapital*, 2005 WL 3454017, at *3 (defendant executed guaranty voluntarily); *Kern*, 2000 WL 1036186, at *3 (no evidence presented that defendant's execution of guaranty was anything but completely voluntary); (Pl. App. at 12) ("Guarantor will directly benefit from Lender's making loans or extending credit to Balfour . . .[.]"). For all these reasons, the Court finds that it has personal jurisdiction over Fish with respect to NE's breach of contract claim.

    *ii)*    *Fraud/Fraudulent Inducement*

Personal jurisdiction is also proper over NE's fraud claim. That claim is based on the following provision contained in the Guarantee:

> (d) <u>Guarantor's Financial Condition</u>.  As of the date hereof, Guarantor is, and will be, solvent, and has and will have assets which, fairly valued, exceed Guarantor's obligations, liabilities and debts, exclusive of contingent liabilities, and has and will have property and assets in the State of Texas sufficient to satisfy and repay such direct debts, obligations, and liabilities.

(Pl. App. at 17). NE alleges that this representation was false when made and that it was made for the purpose of inducing NE to sell its membership interest in Noco to Balfour and that NE in fact acted in reliance on Fish's representation by completing the sale. (Compl. at ¶ 18). NE alleges that Fish's representation in the Guaranty that he would have sufficient assets and property in Texas to satisfy his obligations to NE is in direct contradiction to his declaration filed in support of his motion to dismiss wherein Fish states that he does "not own, rent or lease any real or personal property in the State of Texas." (Def. App. at 25).

"It is well established that the commission of an intentional tort aimed at the forum state will satisfy the minimum contacts requirement." *Double G Energy, Inc. v. AT Gas Gathering, Inc.*, 2005

WL 1837953, at *3 (N.D. July 28, 2005) (citing *Wien Air Alaska, Inc.*, 195 F.3d at 215). In *Calder v. Jones*, the United States Supreme Court held that a person subjects himself to the personal jurisdiction of a state when he intends to cause injury in that state. 465 U.S. 783 (1984). "[T]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (emphasis in original) (internal quotations and citations omitted). That an injury might foreseeably result from the defendant's conduct is not alone sufficient to confer specific jurisdiction; the defendant must also direct specific acts at the forum. *Wien Air*, 195 F.3d at 212; *Plainscapital*, 2005 WL 3454017, at *3. In the personal jurisdiction context, foreseeability means that "'the defendant's conduct and connection with the forum State are such that he should *reasonably* anticipate being haled into court there.'" *Panda Brandywine*, 253 F.3d at 869 (quoting *Burger King*, 471 U.S. at 474)). A defendant should reasonably anticipate being haled into a forum when it "'purposefully directs' its efforts toward the forum State residents." *Id.*

Here it was surely foreseeable that NE would rely on Fish's representation about his financial condition and that it might be injured as a result of such reliance in its home state of Texas. But as explained above, the Fifth Circuit requires that the mere effects of an alleged intentional tort be assessed against the larger backdrop of the defendant's relevant contacts with the forum. *Panda Brandywine*, 253 F.3d at 869.[4] Viewing Fish's activities as a whole, the Court finds that specific

---

[4] NE contends that, subsequent to the formation of the relevant agreements, Fish orally reiterated to NE his promise to make good on his obligations while he happened to be located in Texas. These contacts cannot be considered in the personal jurisdiction analysis with respect to NE's claim that it was fraudulently induced to sell its interest in Noco. "The gravamen of fraudulent inducement is a false representation made to the injured party before the disputed transaction, but for which, the party would not have agreed to the transaction." *Creative Waste Mgmt., Inc. v. Capitol Environmental Servs., Inc.*, 2004 U.S. Dist. LEXIS 21497, at *18 n. 4 (E.D. Pa. October 22, 2004). Because these statements were allegedly made after NE had sold

jurisdiction over NE's fraud claim is proper. As set forth above, Fish initiated a phone call to NE in Texas proposing the idea to sell Noco to Balfour. (Pl. App. at 2). During negotiations, Fish promised NE that he would guaranty the promissory notes constituting the consideration for the sale. Both of those notes were sent to NE in Texas. (*Id.*). Although there is no specific evidence in the record that the Guaranty itself was sent to NE in Texas, it is reasonable, in the absence of contrary evidence, to presume that it was, given that NE was located there. There is evidence in the record that NE relied on Fish's representation that he had property in Texas sufficient to meet his guaranty obligations in finally agreeing to sell NE's interest in Noco and that the negotiation and execution of the sale, on NE's part, was done from Texas. (*Id.* at 3).

Fish states that "[t]o the extent Mr. Fish made any misrepresentations, they all were made outside the State of Texas, and were certainly not directed at the State of Texas." (Def. Reply Brief at 7). He cites to two cases, both of which are factually distinguishable from these facts. In *Creative Waste Management, Inc. v. Capital Environmental Services, Inc.*, Creative Waste Management ("CW"), a Pennsylvania company, alleged that the City of New Rochelle, in New York, fraudulently induced it to enter into a contract to dredge sediment from a municipal marina. 2004 U.S. Dist. LEXIS 21497, at *2 (E.D. Pa. Oct. 22, 2004). The City had published invitations to submit bids for the dredging project in two local New York newspapers. *Id.* Prospective bidders were directed to pick up bid packages in New Rochelle. *Id.* at *2-3. A CW representative traveled to New Rochelle to pick up a bid package and took it back to Pennsylvania for review. *Id.* at *3. CW submitted the lowest bid. *Id.* New Rochelle officials then called CW's vice president to see if CW would be willing

---

its interest in Noco, the Court will not consider them in its personal jurisdiction analysis.

to bid on a reduced scale. *Id.* CW agreed, and the ensuing negotiations over the contract took place in New York. *Id.* at *3-4. New Rochelle later sent a letter to CW in Pennsylvania informing it that it had won the deal. *Id.* at *3-4. CW later alleged that the bid package by New Rochelle concealed and withheld material information concerning the physical condition of the marina and the chemical composition of the sludge to be removed, and CW accordingly brought a claim of fraudulent inducement. *Id.* at *11-12. New Rochelle moved to dismiss the claim for lack of personal jurisdiction.

The district court enumerated nine separate contacts between the parties, only two of which involved any "reaching out" on New Rochelle's part into Pennsylvania – the phone call inquiring whether CW would bid on a reduced scale and the letter awarding the contract to CW. *Id.* at 17-18. The Court found that these contacts were merely informative communications in furtherance of the parties' contract, and, as such, were insufficient to confer personal jurisdiction. *Id.* at 19-20 (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1995) ("informational communications in furtherance of a contract between a resident and a nonresident does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the nonresident defendant."). On the contrary, the relevant fraudulent inducement, the court found, all occurred in New York – where bids were solicited, negotiations took place, the contract was signed, and the property located. *Id.* at 20. The court further found that CW failed to meet the *Calder* effects test because it did not show that New Rochelle expressly aimed its tortious conduct at the forum "such that the forum can be said to be the focal point of the tortious activity." *Id.* at *23.

In contrast to *Creative Waste*, in this case it was Fish that initiated contact with NE, *in Texas*,

regarding the sale of Noco; it was Fish that signed a Guaranty (that included the alleged misrepresentation) containing a *Texas* choice-of-law clause; and it was Fish that represented that he had sufficient property *in Texas* to meet his financial obligations to NE. Recitals in the relevant agreements stated that NE was induced to enter into the transaction with Balfour in reliance on Fish's guarantees. Given that NE is a Texas corporation and, it appears, was at all relevant times located in Texas, it is difficult to conceive of any other forum *but* Texas where Fish's allegedly tortious activity could be said to have been directed.

In *Brokerwood International, Inc. v. Cuisine Crotone, Inc.*, 104 Fed. Appx. 376 (5th Cir. July 9, 2004), also cited by Fish, the plaintiff argued that the effects of the defendant's refusal to cover its receivables was felt in Louisiana. *Id.* at 381. The Fifth Circuit found special jurisdiction lacking, finding that the plaintiff "has alleged only effects – damages – and has not alleged or presented any evidence that [defendant] intentionally directed its conduct toward Louisiana." *Id.* at 382. In contrast, for the reasons stated above, the Court finds that NE has alleged and/or presented evidence that Fish did intentionally direct conduct toward Texas out of which NE's fraud claim springs. NE has therefore made a prima facie showing of personal jurisdiction over Fish with respect to its fraud claim.

D.      **Fairness Factors**

Having established minimum contacts, the burden shifts to Fish to show that the assertion of this Court's jurisdiction over him would be unfair. *Wien Air Alaska*, 195 F.3d at 215. The Court evaluates the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive

social policies. *See Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 874 (5th Cir. 1999). "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, a defendant must make a 'compelling case' against it." *Plainscapital*, 2005 WL 3454017, at *4 (quoting *Wien Air Alaska*, 195 F.3d at 215)).

Fish's case against personal jurisdiction is not advanced by the application of these factors. Although Fish proclaims that defending this lawsuit in Texas would exact a heavy burden on him, he cites to no evidence supporting that claim. The facts show that Fish has traveled to Texas in the past without any apparent hardship. And the State of Texas has a definite interest in determining whether a nonresident committed tortious acts against, and breached contracts with, a Texas resident. *See Capstead Mortgage Corp. v. Sutter Mortgage Corp.*, 1997 U.S. Dist. LEXIS 16504, at *18 (N.D. Tex. March 12, 1997) ("The State of Texas has an interest in providing its residents with a convenient forum for redressing injuries allegedly inflicted by out of state actors."). NE, obviously, also has an interest in proceeding in Texas – it is a Texas corporation and chose to file its lawsuit here. As Fish has failed to address the remaining factors, the Court declines to do so here. In short, the Court finds that Fish has failed to make a "compelling case" that this Court's exercise of personal jurisdiction over him would offend traditional notions of fair play and substantial justice. *See Plainscapital*, 2005 WL 3454017, at *5; *Kern*, 2000 WL 1036186, at *5.

### E.    Objections to NE's Evidence

The Court recognizes that Fish had lodged objections to various materials contained in NE's appendix. Fish first argues that the affidavit of John Callahan is inadmissible as a whole, but he offers no argument or legal authority explaining why the entirety of Callahan's affidavit should be stricken. Instead, Fish specifically objects to only certain paragraphs in the affidavit. He first complains that

Callahan's statement that he executed the sales documents at issue in this case in Dallas, Texas is not the "best evidence" of the actual sale documents. The Court overrules Fish's objection. First, Callahan's statement does not violate the best evidence rule because Callahan is not attempting to prove the content of a writing, but is rather simply declaring where he was when he signed the documents. And second, NE did, in fact, submit a copy of the Bill of Sale in a supplemental filing which contains a notarization plainly indicating – as sworn to by Callahan – that Callahan signed the Bill of Sale in Texas. (Pl. App. at 27-28).

Fish also objects to Callahan's description of Fish's contacts with Texas that occurred after the agreements at issue were executed and/or allegedly fraudulently induced. This objection, however, goes merely to the legal significance of those statements and does not provide a ground for their exclusion from the record. Fish's remaining objections are overruled as moot because the Court did not consider the materials to which he is objecting in reaching its decision. The entirety of Fish's objections are therefore overruled, and his motion to strike is denied.

### III. Conclusion

For the reasons stated above, Fish's Motion to Dismiss for Lack of Personal Jurisdiction (doc. 5) is DENIED as moot. Fish's Amended Motion to Dismiss (doc. 12) is DENIED. The objections lodged in Fish's Objections to Evidence and Motion to Strike (doc. 14) are OVERRULED and the motion to strike is DENIED.

SO ORDERED.   SIGNED January 25th, 2006

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE